BACHE & Co. *v.* UNITED STATES (No. 1583).[1]

1. AUTOMOBILE GOGGLES NOT OPTICAL INSTRUMENTS, SPECTACLES, OR EYEGLASSES.

Glass disks, rough cut or unwrought, made from crown or cylinder glass, bent, known to the trade as mi-coquille glasses, which are chiefly used in the manufacture of automobile goggles to protect the eyes from dust or wind, which do not in any manner transform the rays of light which pass through them or affect the focus of the eyes in any way and which are not capable of being ground into lenses for any such purpose, are not admissible free under paragraph 557, tariff act of 1909, as being "for use in the manufacture of optical instruments, spectacles, and eyeglasses, and suitable only for such use."

2. CONSTRUCTION—LANGUAGE OF ONE PARAGRAPH AS AID IN CONSTRUING ANOTHER.

From the use of the words "spectacles, eyeglasses, and goggles" in paragraph 105, and "spectacles and eyeglasses" only, goggles being omitted, in paragraph 577, it may be reasonably inferred that Congress understood goggles to be different things from spectacles or eyeglasses and deliberately refrained from making material for them dutiable under paragraph 577.

3. REHEARING—DISCRETION OF BOARD TO GRANT.

The denial by the board of a rehearing to permit the introduction of the record of another case involving similar or identical merchandise, this motion having been denied "for the present" at the hearing of the cause, and no further mention of it appearing in the record until after the publication of the board's decision, the record in this court showing with reasonable certainty the character and uses of the merchandise at bar, is not an abuse of the discretion vested in it by section 12, customs administrative law, permitting it to grant a rehearing "when in their opinion the ends of justice may require it," and rule 34 of its own rules of procedure, permitting the introduction of such record "within the discretion of the board."

United States Court of Customs Appeals, January 22, 1916.

APPEAL from Board of United States General Appraisers, Abstract 37674.

[Affirmed.]

*Walter Evans Hampton* for appellants.

*Bert Hanson,* Assistant Attorney General (*Harry M. Farrell* of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of glass disks which are made from crown or cylinder glass, bent, and are called mi-coquille glasses. They bear a general resemblance to ordinary watch crystals in size and shape, but are not beveled.

The articles were assessed with duty at 1⅜ cents per pound and 5 per cent ad valorem as unpolished crown or cylinder glass, bent, under paragraphs 99 and 104 of the tariff act of 1909.

---

[1] Reported in T. D. 36128 (30 Treas. Dec., 174).

The importers protested against the assessment, claiming free entry for the merchandise as glass disks, rough-cut and unwrought, "for use in the manufacture of spectacles, eyeglasses, etc," under paragraph 577 of the same act.

The protest was submitted to the Board of General Appraisers and was overruled, from which decision the importers now appeal.

The following paragraphs are therefore called into question:

99. Unpolished, cylinder, crown, and common window glass, not exceeding one hundred and fifty square inches, valued at not more than one and one-half cents per pound, one and one-fourth cents per pound; valued at more than one and one-half cents per pound, one and three-eighths cents per pound; above that, and not exceeding three hundred and eighty-four square inches, valued at not more than one and three-fourths cents per pound, one and three-fourths cents per pound; valued at more than one and three-fourths cents per pound, one and seven-eighths cents per pound; above that, and not exceeding seven hundred and twenty square inches, valued at not more than two and one-eighth cents per pound, two and one-fourth cents per pound; valued at more than two and one-eighth cents per pound, two and three-eighths cents per pound; above that, and not exceeding eight hundred and sixty-four square inches, two and three-fourths cents per pound; above that, and not exceeding one thousand two hundred square inches, three and one-fourth cents per pound; above that, and not exceeding two thousand four hundred square inches, three and three-fourths cents per pound; above that, four and one-fourth cents per pound: *Provided,* That unpolished cylinder, crown, and common window glass, imported in boxes, shall contain fifty square feet, as nearly as sizes will permit, and the duty shall be computed thereon according to the actual weight of glass.

104. Cast polished plate glass, silvered or unsilvered, and cylinder, crown, or common window glass, silvered or unsilvered, polished or unpolished, when bent, ground, obscured, frosted, sanded, enameled, beveled, etched, embossed, engraved, flashed, stained, colored, painted, ornamented, or decorated shall be subject to a duty of five per centum ad valorem in addition to the rates otherwise chargeable thereon.

577. Glass plates or disks, rough-cut or unwrought, for use in the manufacture of optical instruments, spectacles, and eyeglasses, and suitable only for such use: *Provided, however,* That such disks exceeding eight inches in diameter may be polished sufficiently to enable the character of the glass to be determined.

In order to bring the present articles within the description of paragraph 577 of the free list, it must appear that they are glass plates or disks; that they are rough cut or unwrought; that they are for use in the manufacture of optical instruments, spectacles, or eyeglases; and that they are suitable only for such use.

It is conceded that the articles are glass disks, and the testimony is wholly to the effect that they are rough cut or unwrought.

As to the use for which the glasses are adapted there is some conflict in the testimony. It fairly appears, however, that they are sometimes mounted for use in spectacle frames, and sometimes in the form of eyeglasses, but that their chief use is in the manufacture

of automobile goggles. The glasses are simply disks of plain, clear, bent glass, and are not designed to aid defective vision. They do not in any manner transform the rays of light which pass through them, nor do they affect the focus of the eyes in any way, nor is it claimed that they are capable of being ground into lenses for any such purpose. They are used exclusively in protecting the eyes from dust and wind.

It appears from the testimony that glasses of similar shape but of larger size are sometimes used as faces for cheap clocks or speedometers, but plainly the present sizes can not be thus used. It also appears that they could not be used as watch crystals without first being beveled, and that this can not be done with profit in this country.

The sole question, therefore, in the present case is whether the uses above stated bring the present glasses within the limitations of the paragraph in question—namely, glass disks " for use in the manufacture of optical instruments, spectacles, and eyeglasses, and suitable only for such use." This question must be answered according to the common or ordinary definitions of the terms in question, since no peculiar commercial meaning of the terms appears in the record.

As has been stated, the present glasses are sometimes mounted for use in the frames or forms of spectacles or eyeglasses, but most of them are used in the manufacture of automobile goggles. It can not be said, therefore, that they are suitable for use only in the manufacture of optical instruments, spectacles, and eyeglasses, unless automobile goggles when fitted with such glasses are either optical instruments, spectacles, or eyeglasses within the ordinary meaning of those terms.

Without attempting to formulate any exhaustive definition of the term " optical instruments," we may say that we do not consider it applicable to goggles such as do not in any manner affect the rays of light passing through them, nor alter or affect the vision which is thereby produced. The importers have not distinctly contended that the present glasses are for use in the manufacture of " optical instruments," but the use of the term " etc." in their protest, in connection with " spectacles and eyeglasses," probably brings the question into the case.

The next question in the case is whether automobile goggles when equipped with these glasses may properly come within the terms " spectacles and eyeglasses." It is true in a certain sense that goggles are a peculiar kind of spectacles, and that the word is thus defined in most of the dictionaries. Nevertheless in ordinary speech automobile goggles do not generally pass under the name of spectacles or eyeglasses, and it would be a strained and unnatural use of the latter terms to apply them to such articles. Inasmuch as the

provision in question is restrictive in character and is designed to allow free entry to such glass disks only as are suitable for certain specified purposes, the court should not place such a construction upon its terms as would really break down the intended restriction and permit free entry to articles which do not fairly or naturally respond to its conditions.

This conclusion finds support in the language of paragraph 105 of the tariff act of 1909, which reads as follows:

105. Spectacles, eyeglasses, and goggles, and frames for the same, or parts thereof, finished or unfinished, valued at not over 40 cents per dozen, 20 cents per dozen and 15 per centum ad valorem; valued at over 40 cents per dozen and not over $1.50 per dozen, 45 cents per dozen and 20 per centum ad valorem; valued at over $1.50 per dozen, 50 per centum ad valorem.

It will thus be seen that in the dutiable paragraph of the same tariff act relating to similar merchandise, Congress when levying the same rate of duty upon spectacles, eyeglasses, and goggles felt it to be necessary, or at least expedient, to specify " goggles " as well as " spectacles " and " eyeglasses " in the same clause, thus implying that the latter terms would not *ex proprio vigore* include the former. When, therefore, Congress in the same tariff act limited the free entry of unwrought glass disks to such only as were suitable for use in the manufacture of spectacles and eyeglasses, without mention of goggles, it may reasonably be inferred that disks suitable for the latter use were not intended to be included therein.

The foregoing conclusion is further supported by· the fact that glasses similar to the present ones came before the board in the case of Strauss Bros. & Co., G. A. 6783 (T. D. 29117), and were denied free entry under paragraph 565 of the tariff act of 1897, the predecessor of the present provision. It was said by the board, " it appears from the evidence that the disks in question are used exclusively in the manufacture of goggles, which are neither optical instruments, spectacles, nor eyeglasses." This decision was called to the attention of Congress in " Notes on Tariff Revision," 715, and the paragraph was reenacted in the same words as those therein construed.

The following decisions of the board relate to merchandise for which free entry was claimed under the same provision as that contained in paragraph 577, *supra:* G. A. 2402 (T. D. 14644) ; G. A. 5252 (T. D. 24150) ; G. A. 5662 (T. D. 25252) ; G. A. 6071 (T. D. 26479) ; G. A. 6783 (T. D. 29117) ; G. A. 6823 (T. D. 28327) ; G. A. 6961 (T. D. 30266) ; G. A. 7493 (T. D. 33579).

Some of these decisions are cited by the importers in support of their present claim. It is true that in some of the cases the board may have had before it merchandise somewhat similar to that herein involved and held it to be free of duty under such a provision as that now in question, but in no such case was it stated that the mer-

chandise in question was suitable for use in the manufacture of goggles. In each case wherein the merchandise was held to be free of duty under such a provision the decision was predicated upon an express finding that the merchandise was "for use in the manufacture of optical instruments, spectacles, and eyeglasses, and suitable only for such use." In the case of Strauss Bros. Co., *supra*, the present question came for the first time squarely before the board, and the board held that glasses designed chiefly for use in the manufacture of goggles could not share in the description of " glass disks   *   *   *   for use in the manufacture of optical instruments, spectacles, and eyeglasses, and suitable only for such use." The reenactment by Congress of the relevant provision construed in that case in the same terms in the tariff act of 1909 is a fact which is entitled to weight in the present controversy.

At the trial before the board the importers' counsel moved that the record in the case of Hammel, Riglander & Co., G. A. 5662 (T. D. 25252) be incorporated in the record in the present case. The board, however, announced that the motion would be denied "for the present." No further mention of the matter appears in the present record until after the decision of the board was published. Thereupon the importers' counsel filed a motion for a rehearing in order that the motion above referred to might be considered and finally ruled upon. The importers' counsel upon oath stated that he "believes that it can be shown that the merchandise in G. A. 5662 (T. D. 25252) is similar or identical with" that involved in the present suit. The board overruled the application for a rehearing, and its action in that behalf is assigned as error by the appellants.

Under rule 34 of the board's rules of procedure (T. D. 30506) it is provided that where a question of the classification of imported merchandise is under consideration for decision by any one of the boards, and a decision has been previously made involving the classification of goods substantially the same in character, the record and testimony taken in the latter case may, *within the discretion of the board*, be admitted as evidence in the pending case on motion of either the Government or the importer, or on the board's own order.

Under section 12 of the customs administrative provisions it is provided that the board of three general appraisers, or a majority of them, who decided the case, may, upon motion of either party made within 30 days next after their decision, grant a rehearing or a retrial of said case *when in their opinion the ends of justice may require it.*

In reviewing the record we are satisfied that there was no abuse of the discretion which was vested in the board by the several foregoing provisions. The character of the merchandise on trial and

its uses appear with reasonable certainty in the present record, and the issue in the case after all becomes a question of the proper construction of the terms of paragraph 577, *supra*, according to the ordinary signification of the terms therein used.

See also United States v. American Thermo-Ware Co. (2 Ct. Cust. Appls., 9; T. D. 31571); United States v. American Thermo-Ware Co. (4 Ct. Cust. Appls., 21; T. D. 33218); and American Thermo-Ware Co. v. United States (6 Ct. Cust. Appls., 218; T. D. 35465), noting, however, that the present claim for free entry under paragraph 577, *supra*, or its predecessor was not put in issue in any of these cases.

The decision of the board overruling the protest claiming free entry for the merchandise is therefore *affirmed*.