## United States v. F. W. Myers & Co., Inc.

No. 7798.—

Entry No. A–715.

### Second Division, Appellate Term

(Decided February 20, 1950)

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.

*Barnes, Richardson & Colburn* (*James F. Donnelly* of counsel) for the appellee.

Before Lawrence, Ford, and Johnson, Judges

Lawrence, Judge: This is an application for review of the decision of the trial court, filed under the provisions of section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501). The merchandise consists of artificial flower press machines which were exported from Canada and entered at the port of Rouses Point, N. Y. These machines were entered at $100.86, Canadian currency, each, and were appraised as entered, on the basis of cost of production, section 402 (f), Tariff Act of 1930 (19 U. S. C. § 1402 (f)). Thereafter, the collector of customs filed an appeal for reappraisement, contending for a value of $300, Canadian currency, plus 8 per centum tax, on the basis of foreign value, section 402 (c), Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)).

The trial court found that the plaintiff below had failed to establish all the elements required under the statutory definition of foreign value, and accordingly held the presumptively correct appraised value to be the proper dutiable value.

At the trial of the appeal, the plaintiff offered, and there was received in evidence, a treasury attaché's report, which was marked exhibit 1. The information contained in that report was furnished principally by the inventor of the involved presses, who was also the exporter of the merchandise. The exporter also testified at the trial, being called by the defendant, and was subjected to cross-examination by the Government.

In view of the issue presented, the state of the record, and the conclusion we have reached, it is not deemed necessary to set out here and discuss in detail the eight assignments of error filed herein by the plaintiff below.

With reference to the treasury attaché's report, the trial court observed:

* * * Said report shows that at the time of exportation of the merchandise in question, identical machines were sold in Canada, in the principal market of Montreal, in the usual wholesale quantity (one machine), at the price of $300, plus Canadian taxes. Copies of sales, set forth in the report, support the statements concerning the selling price in Montreal. Sales in the foreign market for home consumption were made *"to manufacturers only, who used these machines in their own business."* [Italics quoted.]

The exporter testified in effect that all of his sales were made with the understanding that he would deliver the machines to the customer's premises and properly install them, setting up and assembling them, rearranging the pulleys to suit the purpose of these machines, and he also instructed the purchaser's operators in the use of these machines. He stated further that he did not take into consideration the cost of delivery and the installation charges. He also testified that these machines were absolutely different from any others. The testimony of this witness in no way contradicted the statements contained in the treasury attaché's report.

The United States (appellant) contended before the lower court and before us that the price shown in the treasury attaché's report is the freely offered price for home consumption to all purchasers in the principal markets of Canada, in usual wholesale quantities and in the ordinary course of trade. In disagreeing with the above contention, the trial court employed the following language:

The record does not support such a conclusion. The absence of positive proof that the foreign market was an open one in which all who were willing to purchase could buy, is fatal. *United States* v. *Malhame & Co.*, 24 C. C. P. A. 448, T. D. 48911. Said report, saying that sales for domestic consumption were made to

"manufacturers only," carries the inference that the Canadian market was a restricted one, in which sales were limited to a particular class of purchasers. The doubt, that such a condition existed, created by the report referred to, was not removed, in the slightest degree, in the oral testimony of the Canadian manufacturer.

The evidence of the Government that the exporter "* * * sold these artificial flower press machines in 1946 in Canada for domestic consumption to manufacturers only, who used these machines in their own business" is a plain statement of what, in the absence of contradictory evidence, we must accept as a statement of fact, and is far more than an "inference that the Canadian market was a restricted one." It is a clear statement of fact that the market for home consumption in Canada for these machines was one "* * * in which sales were limited to a particular class of purchasers." A market in which offers and sales of merchandise are limited to a particular class of purchasers is not a market of free offering to *all* purchasers, as is made abundantly clear from the following quotation from *United States* v. *Malhame*, 24 C. C. P. A. (Customs) 448, T. D. 48911:

* * * The books, in order to have an export value, must have been freely offered to all purchasers in the principal markets of Belgium in the ordinary course of trade at the time of the exportation to the United States of the books here involved. Neither do we think that, where three manufacturers restrict their sales to certain individuals or firms, it can be claimed that such is the ordinary course of trade in the principal markets of Belgium.

It therefore appears from the evidence that there was no free offering of such or similar books as those here involved to all purchasers in the principal markets of Belgium for export to the United States. The most that can be said is that there was an offering to three exclusive agents of three different manufacturers of prayer books, but this is far from a free offering to *all* purchasers. * * * The mere fact that there was competition between Belgian manufacturers in the sale of prayer books for export to the United States cannot affect the question before us, for it appears that none of them freely offered the same to all purchasers in the principal markets of Belgium as is required by section 402 (d) of the Tariff Act of 1930 in order to establish export value. [Italics quoted.]

See also *Bill & Caldwell, Inc.* v. *United States*, 12 Cust. Ct. 437, Reap. Dec. 5996, and authorities therein cited and discussed.

Appellant further complains of the action of the trial court in denying a motion for rehearing, contending that if the motion had been granted it "would have eliminated the doubt, if any, as expressed by the court as to a restricted market * * *." It contends as well that "Such denial of the motion for rehearing amounts to an abuse of discretion" on the part of the trial court.

We are unable to agree with the above contentions. In the trial of this case counsel for both parties, before submitting the case, had every opportunity to introduce all the evidence which they desired or considered necessary. No evidence was excluded.

In its motion for rehearing filed herein, appellant states that "in order that the ends of justice should be met, the Assistant Attorney General's office requested a further investigation in connection with the point stated above," and that it now has in its possession certain information obtained from the manufacturer and exporter herein, Mr. Sulkin. In this connection, it is worthy of note that the Mr. Sulkin who furnished the information contained in the original treasury attaché's report, exhibit 1, and the Mr. Sulkin who furnished the information which appellant states it now has in its possession and wishes to introduce herein, appear to be one and the same party.

In *Monroe-Goldkamp Co. v. United States*, 13 Ct. Cust. Appls. 545, T. D. 41429, in dealing with a very similar question on a motion for rehearing, our appellate court held as follows:

> The general rule in Federal courts is that the denial by the trial court of motions for rehearing will not, on writ of error, be reviewed in appellate courts. *Newcomb v. Wood*, 97 U. S. 581; *Pugh v. Bluff City Excursion Co.*, 177 Fed. 399; *Felton v. Spiro*, 78 Fed. 576.

> On appeals of this kind to this court, we do not review such denials by the board unless it clearly appears that the discretion vested in it has been abused. *Draeger Shipping Co. v. United States*, 13 Ct. Cust. Appls. 419, T. D. 41341; *Bache & Co. v. United States*, 6 Ct. Cust. Appls. 507.

> It is obvious that the real ground of importer's motion is that it should have an opportunity to introduce cumulative testimony on an issue clearly known to importer before the case was tried, or of which it was charged with knowledge. The supporting affidavit discloses no reasons why the absent witnesses were "not available." Nor is there any affidavit from them as to what, in fact, their testimony would be. To hold that the importer was entitled as matter of law to a rehearing, would be to say that it had a right to try its case by piecemeal; in other words, to take a chance on the trial by producing a part of its evidence on a material issue and, if not successful, to again and perhaps again obtain a retrial on the ground that it did not produce at the former trial all the evidence at its command which tended to support its claim.

> Clearly it is not entitled to that privilege, and the board was right in denying the motion. Indeed, importer does not point out in what respect it claims the board erred in denying the same.

Again, in *The Taggesell Co. (Inc.) v. United States*, 17 C. C. P. A. (Customs) 15, T. D. 43318, our appellate court observed:

> Furthermore, the granting of such an application has always been held, in this jurisdiction, to be discretionary. Unless there be an abuse of discretion shown, no error can be assigned upon its refusal. *United States v. Kelley Hardware Co.*, 12 Ct. Cust. Appls. 204, T. D. 40182; *Draeger Shipping Co. v. United States*, 13 Ct. Cust. Appls. 419, T. D. 41341; *Monroe-Goldkamp Co. v. United States*, 13 Ct. Cust. Appls. 545, T. D. 41429. There was no error in overruling the application for rehearing.

In the present case appellant makes no averment that it wishes to introduce the testimony of absent witnesses and that these witnesses were not available at the trial. On the contrary, it appears of record

that appellant, by its motion for rehearing, seeks to introduce the testimony of the witness from whom it secured the information forming the basis of the treasury attaché's report, exhibit 1, which said witness also appeared later at the trial and was actually cross-examined by appellant.

In the light of the facts herein, and in harmony with the authorities hereinbefore alluded to, we hold that there was no abuse of discretion on the part of the trial court in denying appellant's motion for rehearing herein.

Upon a full consideration of the record, we find as facts—

1. That the merchandise herein consists of artificial flower press machines exported from Canada and entered at the port of Rouses Point, N. Y.

2. That the exporter herein freely offered and sold said machines in Canada "to manufacturers only, who used these machines in their own business," there being an absence of proof that the market was open to all purchasers who were willing to buy.

3. That "these machines were absolutely different from any others" offered for sale and sold in Canada at or about the date of exportation herein.

4. That said machines were appraised on the basis of cost of production, as defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)), at $100.86 each, Canadian currency, and that implicit in the appraiser's action is the finding that foreign, export, or United States value could not be satisfactorily established.

We therefore conclude as matter of law—

1. That the market for said machines for home consumption in Canada was a controlled market by reason of the fact that they were offered and sold to manufacturers only.

2. That the evidence offered by the plaintiff in the court below was not sufficient to overcome the presumptively correct value found by the appraiser.

3. That cost of production, as that value is defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)), is the proper basis for determining the value of the machines in question and that said value is the appraised value as set out in finding of fact No. 4, *supra*.

4. That there was no abuse of discretion on the part of the trial court in denying appellant's motion for a rehearing, and accordingly said motion was properly denied.

The judgment of the trial court is, therefore, affirmed.

Judgment will be entered accordingly.